## BOSTON AND WORCESTER RAILROAD CORPORATION *vs.* OLD COLONY RAILROAD CORPORATION.

The owners of a wharf upon which rests the end of a railroad bridge, built across navigable water, by authority of the legislature, cannot recover damages of the railroad company under Rev. Sts. c. 39, § 56, for occupying with their bridge, the space over the navigable channel, which would otherwise serve for a vessel's berth at such wharf.

One who has a right of way across a street, not a public way, by grant from the owner of the fee, cannot recover damages under Rev. Sts. c. 39, § 56, of a railroad company duly locating their road over and along said street, and over said right of way.

As the statutes of this commonwealth confer upon railroad corporations no right to enclose land taken for their road with high fences, so as to prevent the passage of the adjoining land-owner to and from the different portions of his estate, the land-owner cannot rely upon such anticipated obstruction as a ground of damage against the company for taking his land.

The owner of wharves, in front of which a railroad is located according to law, cannot recover of the railroad company, as damages under Rev. Sts. c. 39, § 56, the anticipated depreciation of the wharf property because the access thereto is made dangerous and inconvenient.

In an application by one railroad company against another company for damages caused by taking the petitioners' land under Rev. Sts. c. 39, § 56, it is not a proper consideration for enhancing the damages, that the petitioners own a railroad extending far into the interior, and are doing a large and profitable business, which would be incommoded by the track and conveniences of the respondents. But the fact that the land taken by the respondents is near a railroad communication with tide waters and the harbor of Boston, and the increased value of the property for any and all useful business purposes, are proper considerations in estimating the damages.

SHAW, C. J. This was a petition for the assessment of damages caused by the respondents, in making a location of their railroad upon the wharf and land of the petitioners. It was commenced before the mayor and aldermen, as county commissioners, and by consent, a verdict was given for nominal damages, and an appeal taken to the court of common pleas. It was there tried, and a verdict returned in the alternative, and the case comes before us on exceptions by both parties. We shall first consider the exceptions of the petitioners

51 *

1. The Old Colony Railroad Corporation were authorized to extend their road into Boston, by a special act, *St.* 1847, *c.* 85. The company filed their location in the city clerk's office, on the 31st of May, 1847, and proceeded to build and complete their track from the end of the bridge crossing Fore Point channel to Kneeland street. They had previously been authorized, by an act passed in 1845, *c.* 126, to extend their track by a bridge across Fore Point channel to the wharf of the petitioners, if done with their consent. Such consent was given, and the bridge was built before the last grant; and this act contained a provision that nothing contained in it should impair their right to continue and maintain said bridge.

The petitioners owned the wharf and land against which the westerly end of said bridge was built, and they claimed damages for the injury to their estate by the said bridge, by impeding the access to their wharf by vessels, and by occupying the space which would have served the purpose of a vessel's berth, lying at their wharf. The judge decided that they could maintain no such claim, and rejected the evidence offered in support of it, to which the petitioners excepted. This court are of opinion that this decision was right. As we understand the facts, this bridge passes over the channel only, which is part of the public domain; being a navigable channel from which the tide does not ebb, the legislature had the right to authorize the bridge, and did authorize both the bridge and the continuance of it. If the petitioners sustained any loss by it, it was a damage arising from a partial impediment in the use of a public right, a damage sustained by them in common with all the rest of the community, and for which they could have no claim for damage. They had no right to occupy that part of the channel as a vessel's berth, because it was upon a public navigable stream, and if occupied in fact more extensively by them than by others, it would be by sufferance, and not as of right.

2. The second matter of exception turned upon a claim made for damage to the petitioners, from the fact that they owned land on both sides of Lehigh street, and that Lehigh

street, though much travelled, had never been accepted by the city as a public highway. The soil of the street was in the South Cove Corporation, who had granted lands bounding on it, to various persons, with rights of way over it; and the petitioners themselves had acquired, by a grant from the South Cove Corporation, a right of way for six private tracks across it to various places. One of these points of intersection was in Lehigh street, and the petitioners claimed damage on the ground that the respondents, by their location, acquired a right to close up Lehigh street, and thereby entirely obstruct the petitioners in the use of their track. The judge thought otherwise, and instructed the jury that the respondents would have no right to fence their location, so far as the same lay in Lehigh street, and that damages should be awarded only for the inconvenience or disturbance suffered by the petitioners in the use of their tracks at the crossings, but not for the exclusion of them from their right to cross Lehigh street with their tracks, and use them as their convenience might require. This direction, we think, was right as to the main point, and only too favorable for the petitioners. They had a right of using it in common with others; afterwards, the owner of the soil granted right of way to the respondents, or what is equivalent, such a right of using it was taken by law, which is in the nature of a statute purchase. It is very questionable whether the use of one, who has a common right, can be the ground of a claim for damage from another who has only a common right. Each is bound to use his common right as far as practicable, in such manner, as not unnecessarily to impede the like common use by another. It is only for an abuse of a common right, to the injury of another, that any legal remedy exists, and then it is to be sought by an action on the case for a disturbance. The petitioners were not the owners of the soil over which Lehigh street was laid; they had obtained of the owners certain rights of way, but that did not preclude others from acquiring rights of way over the same soil. The inconvenience occasioned by others thus having a common right, is not a distinct cause or source of damage to the petitioners, and is, therefore, distinguishable from the

case of *Parker* v. *Boston & Maine Railroad*, 3 Cush. 113, 114, and we think the jury should be so instructed.

3. The third exception on the part of the petitioners is thus stated: The petitioners prayed the court to instruct the jury, that by such location the respondents had a right to cut off and break up the track of the petitioners within their location, and thus totally to interrupt their use of the same, in passing to and from their said wharves, so far as the location lay within the land of the petitioners, viz: from Lehigh street to the cap-sills at the east end of their said wharves; and they claimed damages accordingly. The court, by consent of parties, requested the jury to consider this as a separate claim, and be ready to return, in case the petitioners should be entitled to recover damages on this ground, how much the petitioners were entitled to recover in addition to all the other damages they might be found to have sustained. The jury returned a verdict for the petitioners on all their other claims for $20.155.83, and on the ground above stated, for $22,500, making in all, $42,655.83. After this verdict, the respondents filed a disclaimer of any right to erect any such fence along the line of their track, within the petitioners' territory, so as to obstruct them from a passage to, from, and over other parts of their territory. The petitioners moved for judgment on the larger verdict, which the court overruled, to which decision they excepted.

The court are of opinion that this decision of the court of common pleas was correct, and that the petitioners' claim for damages on this ground was untenable. We are not aware of any such absolute right and power of railroad proprietors, under the authority given them by statute, to take land for the use of the railroad, without any exigency, to erect and place high fences along the margin of their track on both sides, and exclude the proprietors of the land to and from all communication between their land on one side and the other of their track. There are various provisions of law, some authorizing, some requiring them to fence against the railroad, when the safety of passengers, or the rights of coterminous proprietors require it. By the provisions of the revised

statutes, we believe that the proprietors of railroads are not obliged to make and maintain a fence against the lands of private owners, but it is made the duty of coterminous proprietors to prevent their cattle from straying on to the railroad track; their liability to this duty was one of the burdens imposed on the landholder, and the necessary expense of fencing against it, therefore, was one of the expenses to which they were subjected, and might properly be taken into consideration in assessing their damages for the taking. By *St.* 1846, *c.* 271, § 3, every railroad corporation is required to erect and maintain suitable fences, with convenient bars, gates, or openings, at such places as may reasonably be required, &c. The object manifestly is, the security of the public on the railroad, and the rights of individuals. It imposes a duty rather than confers a privilege on proprietors of railroads to maintain suitable fences, with a reservation of all convenient means of communication to all persons concerned. This is very different from an absolute right and power of proprietors of railroads, arbitrarily, when no exigency of public and private right requires, in cities and compact villages, as well as through pastures and open fields, to place high fences along their track, without regard to the just rights of private proprietors. It is one argument against the admission of such a claim, that after the lapse of a considerable number of years, during which, railroads have been laid out in Massachusetts, no such claim has come to our knowledge; and yet if the right existed, it would be likely to appear as a ground of damages, in every case of assessment, either by commissioners or juries. See *St.* 1849, *c.* 222, § 2.

We now come to consider the exceptions of the respondents, and the reasons urged by them against the verdict returned by the jury for the smaller sum, and praying that that verdict may be set aside and a new trial ordered.

1. The petitioners had given evidence that they were owners of a wharf called Railroad wharf, and three quarters of a wharf called Clarke's wharf, towards which their own tracks extended; that they were largely engaged in the freighting business; that those wharves were necessary to

their business; that the tracks of the respondents would impede travel to and from their wharves and diminish the profits of their business. This is a brief statement of the exceptions, which are greatly extended in the bill of exceptions.

The judge having admitted. evidence to show the inconvenience to the petitioners, of the passing of trains by the respondents, near the front of their wharves, and having declined to instruct the jury as prayed for by the respondents, did instruct them that the petitioners were entitled to recover all the injury caused by the location and maintenance of the respondents' railroad, and for the taking of their land, and for the injury caused by the railroad lying in front of their wharves, on Lehigh street, and in cutting off access to said wharves, by said tracks, or disturbing the petitioner's right of way in Lehigh street, and also for the diminution of the value of the wharves, for business purposes, by rendering access of the public to the same dangerous or inconvenient.

In regard to the delay and impediment of the petitioners in crossing Lehigh street, we have already stated our opinion. Upon the other part of this exception, the court are of opinion that the inconvenience suffered by the petitioners, by the location and use of their railroad, by reason that the public, with their teams and carriages, will have a less free and convenient access to different parts of the petitioners' wharves, from the north towards the south side, and the reverse, is not a substantive ground for a claim for damages. It is an inconvenience of the same nature and character suffered by them, as that suffered by all the rest of the public in the use of the streets and ways of the city; and the damage is only greater to them by reason of their proximity, and the more frequent occasions, of themselves and their customers, to use these public rights. The regulation and enjoyment of these public rights must, of necessity, have been taken into consideration in making a grant to a railroad company of such specific location, and determine, on the whole, whether, upon a balance of convenience and inconvenience, the public good requires it.

2. The judge also instructed the jury that in assessing

Boston and Worcester Railroad Corporation *v.* Old Colony Railroad Corporation.

damages for the petitioners, they were not to consider merely the value of the land, estimated at the market rates; that this was one element in considering the value to the petitioners, but that if, by its situation, or from the peculiar business of the petitioners it was of peculiar value to them, such peculiar value should also be taken into account; that in short, the petitioners were entitled to recover such a sum as would make them whole, and indemnified for the injury sustained in said property by reason of the taking of the land and the use of it, and by the location and maintenance of said road in front of said land in Lehigh street.

The court also instructed the jury that in estimating damages, they were to consider not merely the extent of the business of the Boston and Worcester Railroad at the time of the taking of the land, but also the present and future business, as far as it could have been fairly foreseen and judged by the facts then known, and that the evidence offered of the increased and increasing amount of business was competent as tending to show the fact; that the jury were not to take into view any new or extraordinary kind of business, but only such as might be reasonably anticipated as the natural growth of such road.

These directions were in the main correct, but we apprehend they were not attended with some necessary qualifications, and as there must be a new trial, the court, apprehensive that the jury may have been misled by the generality of the charge, suggest the following observations.

The petitioners, though they were themselves a railroad corporation, and as such common carriers of goods, yet they claim here as landholders, suffering damage from the taking of a portion of their land for railroad purposes. We think, therefore, that this fact, that they were carriers of goods, and had a railroad extending far into the interior, and were doing a large or profitable business, was not a proper consideration for enhancing the damages; but the fact of the proximity of the railroad communication with the tide-water and harbor of Boston, and the value thereby added to the wharves for any and all useful business, was a consideration which would

enhance their value to any owner, and, therefore, would be a proper ground for enhancing the damage done to the respondents.

3. An exception was taken to the admission of the opinions of witnesses both to their qualifications and the extent to which they were called upon to express opinions. We do not think it necessary again to restate the doctrine of the testimony of opinions by persons of experience; it is undoubtedly competent to a limited extent. But in looking at the exceptions in the present case, we are inclined to the opinion, that the persons called, hardly came within the legal idea of experts, and that the extent to which they were called on and permitted to express opinions, went beyond the reasonable and just limits, to which, by the rules of evidence, such testimony is considered competent.

> *Exceptions of petitioners overruled; exceptions of respondents sustained.*

*G. Bemis*, for the petitioners.

*W. Sohier*, for the respondents.